1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

PLAINTIFF'S COMPLAINT



## The Offices of Peter S. Forster, J.D.

ISLN: 907331986        Pefo0128@outlook.com        (812)236-1636

*James Lantos*
*408 Paris Hill Road*
*South Paris, ME 04281*
*Phone number: (781) 296-3539*
*Email: jim@jimlantos.com*

*Wayfair Inc., Wayfair L.L.C.,*
*And Wayfair Stores Limited*
*Attn: Litigation Department*
*4 Copley Place*
*Boston, MA 02116*

*CC: Charlie Reichenbach, Head of Supplier Onboarding*

**5ᵗʰ day of June, 2024**

### RE: *Demand Letter and Request for Mitigation*

To the Litigation Department at Wayfair Inc., Wayfair L.L.C., And Wayfair Stores Limited:

There seems to be a misunderstanding regarding my client, JAMES LANTOS', onboarding account with Wayfair. I just wanted to make sure that is the case so we can get any issues resolved amicably. However, because Mr. Lantos has no way to communicate the problem to the correct department appropriately, considering he has been shut off from your website onboarding portal with no means of contacting a supervisor about the problem your low-level employee has created for him, we have had to resort to preparing a demand letter and a complaint.

It is not Mr. Lantos' intention to initiate litigation, but he would rather simply ask you ("Wayfair") to honor your contract and for both parties to work together fruitfully as partners.

### *Solutions*

Mr. Lantos asserts the following resolutions can be used to solve any issues:

On December 19, 2023, Mr. Lantos signed a 10-page Onboarding Supplier Agreement with Wayfair that was countersigned by the above noted Head of Onboarding.   Mr. Lantos spent the next several months working with "Jim" of your onboarding team in going back and forth to meet the onboarding requirements.  Notably, the most difficult of these requirements was the creation of a test datafeed of products offered by my client's company to sell on Wayfair, Snapshots of the Past.

On April 5, 2024, Mr. Lantos's was finally completed with his test datafeed but found that access to your onboarding portal was unexpectedly terminated.   After several emails in the following week, and receiving no reply, Mr. Lantos was no longer able to login to your onboarding website. This is a violation of the contract you signed with my client on December 19, 2023, and in particular a violation of the clause indicated that either party could terminate the contract with 60 days notice.   You did not give my client the required 60 days notice.

Attached a transcript of the email correspondence between my client and Wayfair from the time of his signing of the contract until his access to the onboarding portal was terminated.

**DEMAND**

**A) Either "Wayfair" get the onboarding process moving again, within 2 weeks receipt of this letter, as my client does in fact have the data-feed situation solved and was ready to go with the revised feed back on April 5, or…**

**B) "Wayfair" mail Mr. Lantos a check for $20,000. My client calculates he has put in probably 100 hours on this matter (eg getting up to speed with your onboarding requirements) since he signed a contract with you December 19, 2023 @ $200/hr.  Those are damages for time wasted when he could have been pursuing other business opportunities.**

**If you do not adhere to these demands, Mr. Lantos will sue for breach of contract in court, for $20,000 multiplied by 3 times that amount under Massachusetts Consumer Fraud Statute 93A, which will equal $60,000 in damages.**

Finally, it is fair to mention that Mr. Lantos had to take time to get his partner in Rhode Island (a printer and framer who does the production work for him) to present an insurance liability disclosure to Wayfair, a copy of which is attached.  The time it took to produce this adds another 10 or so hours to be added @ $200/hr for his time on this as well if this should go to court.

Mr. Lantos is willing to waive that in lieu of a $20K settlement now or if Wayfair resumes the onboarding process as the two parties originally contracted to so he can in turn start making money with Wayfair as he had originally hoped.

If the request presented in-supra is not adhered to within the specified time aforementioned (14-Days), Mr. Lantos will be forced to initiate the litigation process, a process, that after years of apparent other multiple and expensive legal issues Wayfair has been facing, that Wayfair would more than likely want to avoid.

In order to avoid any said litigation, Mr. Lantos simply wishes to continue to use the onboarding platform which both parties initially agreed upon.

We trust that you will give this letter your prompt and preferential attention to avoid the expense and inconvenience of litigation. Please coordinate with Mr. Lantos for the proper computation of the dates this issue will be resolved. Thank you for cooperating.

Respectfully yours,
Dated June 5, 2024

**J.D. , Mediator**

**WAYFAIR – LANTOS – SUPPLIER CONTRACT**
**12-19-23**

## Electronic Record of Contracts

This document was generated as a record of certain contracts created, accepted and stored electronically.



### Summary of Contracts

This document contains the following contracts.

| Title | Revision | ID |
|-------|----------|-----|
| Supplier Agreement | 1 | 65819744e551198fdd1603ea |

### Contract signed by:

| e844364a-6708-4d6f-9ad4-890b72fd5759 | *James Lantos* | Signer ID: | e844364a-6708-4d6f-9ad4-890b72fd5759 |
|---|---|---|---|
| | | Email: | snapshotspast@gmail.com |

| Date / Time: | Dec 19, 2023 at 8:18 AM EST |
|---|---|
| IP Address: | 174.196.193.182 |
| User Agent: | Mozilla/5.0 (Windows NT 10.0; Win64; x64; rv:120.0) Gecko/20100101 Firefox/120.0 |

Completed by all parties on:
**Dec 19, 2023 at 8:18 AM EST**

Ironclad



## SUPPLIER AGREEMENT

This Supplier Agreement (this "**Agreement**") is made as of the date set forth on the signature page by and between the supplier identified below ("**Supplier Entity**", "you", or similar) and the Wayfair Entity or Entities set forth on **Schedule A** ("**Wayfair**", "we", "us", "our", or similar). This Agreement contains the terms and conditions that govern our marketing and sales of your products (together with any packaging you provide, "**Products**") and any Product purchases by us from you. This Agreement does not obligate Wayfair to market, sell, or purchase Products. By signing below or by accessing Wayfair's supplier platform ("**Partner Home**"), you agree to be bound by all terms and conditions of this Agreement. The person signing the Agreement represents and warrants that they have all requisite right, power and authority to enter into this Agreement and to legally bind the Supplier Entity.

1. **Regions and Sales Channels.** You will inform us in Partner Home, or by other Wayfair approved means, of the Region(s) and Subregion(s) in which your Products are legally compliant and authorized to be offered for sale. We may offer the Products for sale in any Sales Channel in such designated Region(s) and Subregion(s), unless otherwise agreed between you and us. "**Sales Channel**" means any one of our omni-channel offerings, including our family of websites and physical retail locations. "**Region**" means any one of the geographic regions set forth on Schedule A. "**Subregion**" means any country within a Region.

2. **Standard Payment Terms.** Unless otherwise agreed between you and us, we will pay you all undisputed invoiced amounts for Products within sixty (60) days of our receipt of an invoice. If you do not dispute the amounts we pay you (including amounts we withhold or setoff) within sixty (60) days of the payment voucher date, the payment amount will be deemed final. Wayfair and its Affiliates may set off or recoup any amounts owed to you against any amounts you owe to such entities. "**Affiliate**" means, with respect to any entity, any other entity that directly or indirectly controls, is controlled by, or is under common control with that entity.

3. **Product Information.** In order to create a best-in-class merchandising experience for your Products, we require timely, accurate and complete Product information from you. You agree to provide us, on an ongoing basis and free of charge, all available Product information, including all specifications, features, images, videos, or computer-aided design models, and all information required to be provided under Section 4 (collectively, "**Product Information**"). Product Information also includes manufacturer suggested retail price, recommended retail price or similar pricing information and any other information about your Products collected by us, or otherwise made available to us by you. You represent and warrant that you have all necessary right to grant any rights or licenses to the Product Information set forth herein, that the Product Information is accurate and substantiated, and that the Product Information does not infringe any copyright, trademark, patent, or other intellectual property rights of a third party. Any documents, images, models or other information concerning the design of Products provided to you by Wayfair are not design specifications or requirements, but are instead only suggestions that you are free to reject. You are solely responsible for the design of the Products. You grant us and our Affiliates, in connection with any business, marketing, advertising, educational, or promotional activities, a non-exclusive, worldwide, perpetual, irrevocable and royalty-free license to: (a) use, copy, display, perform, and distribute the Product Information in any medium; (b) excerpt, reformat, adapt or otherwise create or have created derivative works of the Product Information, including, without limitation, creating computer-aided design models; and (c) use all trademarks or trade names included in the Product Information.

4. **Product Safety and Compliance; Product Recalls; and Supplier Audit.**
   a. Product safety and compliance is critically important to Wayfair and the safety and well-being of our

customers is our top priority. Accordingly, you represent and warrant that you will comply with, and that each Product complies with, all applicable laws, ordinances, rules, regulations, orders, licenses, permits, judgments, or decisions of any federal, state, territorial, or provincial jurisdiction, now or hereafter in effect, in any geography within the applicable Region(s) or Subregion(s) (collectively, "**Applicable Laws**"). It is your responsibility to promptly inform us in Partner Home or by other approved means if a Product does not comply with Applicable Law, including, but not limited to, meeting all safety regulations, passing all necessary testing requirements, and maintaining all proper warnings, labels, licenses and/or Product certifications. Additionally, you must promptly notify us in Partner Home or by other approved means of any necessary warnings, disclaimers, or other notices required by any Applicable Law or any agreement you have entered into with any licensors, or that are customary in your industry. You represent and warrant that your Products are new, properly packaged and labeled in accordance with our policies, fit for the ordinary purposes they are intended to serve, and free from defects in design, materials, and workmanship. We reserve the right to suspend from sale, or cease the listing, advertisement, or promotion of any Product at any time and in our sole discretion.

b. You agree that you are solely responsible for any public or private recall or corrective action in connection with the Products (a "**Product Recall**"), including, but not limited to, payment or reimbursement for any and all costs, expenses, and fees associated with a Product Recall, and any customer refunds, replacements, repairs, Product repositioning, or administrative expenses incurred by Wayfair. Similarly, you agree that you will promptly notify Wayfair of (i) any material product defect and/or (ii) any Product Recall, provide any information requested by Wayfair in connection with any Product Recall, and promptly inform, cooperate, and liaise directly with any regulatory authority in connection with any material product defect, Product Recall, or other regulatory inquiry regarding the Products.

c. You must be able to certify and, if applicable, substantiate that you and the Products are in compliance with Applicable Laws and this Agreement, and you permit Wayfair to audit and verify such compliance. You agree to promptly respond to any such audit request and to provide sample Product(s) and any requested testing, labeling, import, or Product documentation at your cost and expense. As part of fulfilling this requirement, you also agree to provide Wayfair with access to any past, present, or future Product testing documentation, and hereby also authorize any third-party testing facility to disclose and transmit any existing or future reports to Wayfair concerning the Products.

d. You acknowledge that you read and agree to the Wayfair Supplier Code of Conduct, and that such Supplier Code of Conduct may be updated or amended from time to time in our sole discretion.

5. **User Accounts and Representations**

a. You are responsible for providing and maintaining accurate, current, and complete information relating to your user accounts in Partner Home and on all other Wayfair platforms ("User Accounts"). This includes creating and maintaining secure login identifiers and passwords. You are responsible for all activity associated with your User Accounts, including promptly notifying Wayfair of any unauthorized access.

b. You represent and warrant that: (a) your business is duly organized, validly existing and in good standing under Applicable Laws; (b) you have all requisite right, power and authority to perform your obligations, and grant the rights, licenses, and authorizations under this Agreement; (c) you are not subject to sanctions or otherwise designated on any list of prohibited or restricted parties or owned or controlled by such a party, including but not limited to the lists maintained by the United States Department of Treasury, the United States Department of Commerce, the European Union or its member states, the United Nations Security Council, or other applicable government authority; and (d) you will comply with all Applicable Laws in performance of your obligations and exercise of your rights under this Agreement.

6. **Supplier Defense and Indemnification.** You will defend, indemnify, and hold harmless Wayfair, its Affiliates, and their respective officers, directors, employees, and agents (the "**Wayfair Parties**") from and against any and all losses,

damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, that are incurred by a Wayfair Party arising out of or in any way relating to any third party claim, demand, action, lawsuit, or proceeding (each, a "**Claim**") to the extent arising from or in connection with: (a) the design or manufacture of any Product, including any death of or injury to any person, damage to any property, or any other damage or loss actually or allegedly caused by a Product; (b) any Product Recall or safety issue; (c) any actual or alleged infringement or misappropriation of any third party intellectual property rights by you or any of your Products or Product Information; (d) your failure to provide, or any inaccuracy in, Product Information; (e) any pricing error arising from or relating to pricing information provided by you, including relating to cancellation of any customer order based on a pricing error caused by you; (f) your actual or alleged breach of Applicable Laws or your obligations, representations, or warranties under this Agreement; and (g) your gross negligence or willful misconduct. You will not consent to the entry of a judgment or settle any Claim without the applicable Wayfair Party's prior written consent. You will use counsel reasonably satisfactory to the applicable Wayfair Party, which we will confirm in writing, and the applicable Wayfair Party will cooperate in the defense at your expense. If the applicable Wayfair Party reasonably determines that your handling of an indemnified Claim might have an adverse effect on a Wayfair Party, that Wayfair Party may take control of the defense at its expense (without limiting your indemnification obligations). Your obligations under this Section 6 are independent of your other obligations under this Agreement. Notwithstanding the foregoing, in the event that you fail to reasonably assure us that you will fulfill your indemnification obligations with respect to any Claim within five (5) days after notice by us thereof, then we shall have the right to defend or settle the Claim in our sole, reasonable discretion and either invoice you for the reasonable costs and expenses of such defense or settlement or deduct the reasonable costs and expenses of such defense or settlement from any amounts that we owe to you.

7. **Limitation of Liability.** NEITHER PARTY IS LIABLE TO THE OTHER FOR ANY LOSS OF PROFITS OR FOR OTHER CONSEQUENTIAL, SPECIAL, INCIDENTAL, PUNITIVE, OR INDIRECT DAMAGES ARISING IN CONNECTION WITH THIS AGREEMENT, EXCEPT FOR THOSE ARISING IN CONNECTION WITH YOUR DEFENSE AND INDEMNIFICATION OBLIGATIONS UNDER THIS AGREEMENT (SECTION 6) OR A PARTY'S CONFIDENTIALITY OBLIGATIONS UNDER THIS AGREEMENT (SECTION 9).

8. **Insurance.** This Section 8 sets forth our insurance requirements. We may amend these requirements from time to time upon written notice to you. Your obligations under this Section will survive the termination or expiration of this Agreement for a period of one (1) year. We reserve the right to suspend your Product listings if you fail to comply with these requirements or we determine in our sole and absolute discretion that your insurance coverage is unenforceable or is issued by an insurance company that does not meet our standards.

   a. **Required Limits and Insureds.** You are required to obtain, maintain, and carry in full force and effect at all times, at your sole expense, at least the insurance coverage set forth in this paragraph, subject also to the requirements set forth in subsection (b) of this Section 8. Required coverage includes, for each applicable Region and Subregion in which your Products are offered for sale, commercial general, umbrella or excess liability insurance (or the local equivalent in your Region or Subregion) covering liabilities caused by or occurring in conjunction with the operation of your business, including products, products/completed operations and bodily injury, on an "occurrence form", of at least $1 million USD per occurrence. If the coverage contains an aggregate limit, it shall be no less than $2 million USD per calendar year. There can be no per-occurrence or aggregate sublimit with respect to coverage for products liability. Coverage limits may be denominated in a currency other than USD, provided that they are equivalent to the USD amounts set forth herein. The coverage must include as named insured the Supplier Entity and any other Supplier Entities that offer Products to us, and must also include as additional insureds (or additional beneficiaries, co-insureds or other local equivalent) Wayfair Inc., Wayfair LLC and Wayfair Stores Limited (and their respective officers, directors and employees and all successors and permitted assigns).

   b. **Additional Required Terms.** The insurance coverage required by this Agreement (i) must be issued by insurance companies with a Best's rating of no less than A- or that are otherwise reasonably acceptable to Wayfair and (ii) must provide that such insurance be primary insurance with respect to any insurance maintained by us, and that our insurance will be excess of all insurance maintained by you and non-

contributory. You will cause all applicable policies to be endorsed to provide us (or an agent designated by us) with at least 30 days' prior written notice of cancellation (10 days for non-payment). You will also notify us promptly of any non-renewal or expiration of, or adverse material change to, such coverage.

c. **Evidence of Insurance.** You agree to provide certificates of insurance (or its equivalent), and policy endorsements for all insurance coverage required by this Section 8 (i) prior to selling your Products under this Agreement, (ii) within ten (10) days of any policy renewal, and (iii) upon our request (including a copy of the underlying policy upon request). You also agree not to do anything to invalidate such insurance at any time during the term of this Agreement.

9. **Confidential Information; Publicity; and Privacy.**

    a. **Confidential Information.** The parties agree that the terms of this Agreement and any other nonpublic information or data that one party (the "**Disclosing Party**") discloses to the other party (the "**Receiving Party**") before or during the term of this Agreement will be considered "**Confidential Information**", whether written, oral, visual or otherwise. Confidential Information shall include, without limitation, all information and materials about any Wayfair customer in whatever format, including customer names, addresses, phone numbers, and email addresses (collectively, "**Customer Information**"). Except as otherwise required by law, during the term of this Agreement, the Receiving Party will, and will cause its Affiliates, employees and representatives to: (i) hold in strict confidence and protect all Confidential Information; (ii) not disclose, publish, distribute, provide or otherwise disseminate Confidential Information to anyone other than its or its Affiliates officers, directors, employees, agents, accountants and attorneys, and other authorized representatives who have a need to know and who are bound by confidentiality obligations at least as restrictive as those in this Agreement; (iii) use the Confidential Information only to fulfill its obligations under this Agreement; and (iv) promptly return or destroy any materials containing Confidential Information upon the request of the Disclosing Party or upon the termination of this Agreement. The Receiving Party will be responsible for any violation of the terms of this Agreement committed by it or its Affiliates' employees or authorized representatives. Notwithstanding the above, the Receiving Party may disclose Confidential Information to the extent such disclosure is required by an applicable law, regulation, a valid order of a court or other governmental body of competent jurisdiction, or other legal requirement, including governmental investigation or enforcement proceedings.

    b. **Publicity.** Neither party will, without prior written permission, issue press releases or make any public statement relating to the other party or this Agreement. The parties also agree not to misrepresent or embellish the relationship between the parties in any way.

    c. **Privacy.** In addition to the obligations set forth in subsections (a) and (b) of this Section 9, you also agree to:

        i. maintain Confidential Information, and in particular Customer Information, in strict compliance with all applicable privacy and data protection laws;

        ii. promptly, and in no event more than 24 hours after discovery and in any event before notifying any regulatory authority, data subject or third party, notify Wayfair upon becoming aware of any unauthorized access to or use of any Confidential Information that compromises the security, confidentiality, or integrity of such information (such event, a "**Supplier Data Security Breach**");

        iii. implement appropriate technical and organizational measures to protect the Confidential Information, including an incident response function capable of identifying and mitigating the effects of, and preventing the recurrence of any Supplier Data Security Breach;

        iv. cooperate with Wayfair to assist in the investigation, mitigation, and remediation of any Supplier Data Security Breach and provide Wayfair with sufficient information to allow Wayfair to meet any obligation to report or inform customers or other impacted parties of such event under applicable privacy and data protection laws; and

v. reimburse Wayfair for the reasonable expenses that Wayfair incurs as a result of a Supplier Data Security Breach.

10. **Termination and Survival.** Either party may terminate this Agreement with 60 days' prior written notice. Regardless of any termination, you will fulfill all orders you accepted before the effective date of termination unless prohibited by Applicable Law. Any terms that by their nature should reasonably be expected to survive termination shall so survive, including Section 3 (Product Information), Section 4 (Product Safety and Compliance; Product Recalls; and Supplier Audit), Section 5 (User Accounts and Representations), Section 6 (Supplier Defense and Indemnification), Section 7 (Limitation of Liability), Section 8 (Insurance), Section 9 (Confidential Information; Publicity; and Privacy), Section 10 (Termination and Survival), and Section 11 (Miscellaneous).

11. **Miscellaneous.**

a. **Dispute Resolution; Binding Arbitration; Jury Waiver; Choice of Law; Jurisdiction.** The parties agree that the venue and governing law of any claim or controversy arising from this Agreement shall be determined in accordance with the "<u>Governing Laws</u>" (without reference to rules governing conflict of law) and the "<u>Governing Venue</u>" listed on <u>Schedule A</u> that correspond with the Region in which the claim or controversy arose. In the event of a matter (i) arising outside of the Regions listed in this Agreement, (ii) involving multiple Regions, or (iii) where it is not clear where the claim or controversy arose, the Governing Laws and Governing Venue shall correspond to the Region with the most gross sales of your Products. For the avoidance of doubt, the Parties' rights and obligations under this Agreement are not governed by the United Nations Convention on Contracts for the International Sale of Goods. **Where this Agreement is governed by Governing Laws for the U.S. or Canada Regions listed on Schedule A, any dispute, claim, or controversy arising from or relating to this Agreement (except for actions to enforce your obligations set forth in Section 6 or to enjoin infringement or other misuse of intellectual property rights) will be resolved by binding arbitration, rather than in court.** The arbitrator also has the sole authority to and shall address all claims or arguments by both parties concerning the formation, legality, and enforceability of this arbitration clause, the scope of this clause, and the arbitrability of any claim or issue arising between us. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would. **You and Wayfair each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action and the parties expressly waive their right to file a class action or seek relief on a class basis.** If for any reason a claim proceeds in court rather than in arbitration you and Wayfair each waive any right to a jury trial. In the U.S. Region, to begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to legal@wayfair.com. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Commercial Arbitration Rules. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. To the extent that there is a conflict between this clause and the AAA Rules, the arbitrator shall resolve such conflicts so as to preserve the parties' mutual obligation to arbitrate claims on an individual basis. In the Canada Region, except where prohibited by law, the arbitration shall be referred to and determined by a single arbitrator in a final and binding arbitration administered by and under the rules of ADR Institute of Canada, Inc.'s Arbitration Rules.

b. **Accuracy of Information.** You will be solely and exclusively responsible for maintaining the accuracy of all Product Information, account information and other information you provide to us in connection with this Agreement and/or via Partner Home. If any such information ceases to be true, accurate, or adequate, you will promptly inform Wayfair in Partner Home or by other approved means as is necessary to maintain the accuracy or adequacy of such information.

c. **Assignment.** You may not assign or otherwise transfer this Agreement or any of your rights and obligations under this Agreement, by operation of law or otherwise, without our prior written consent. Any assignment or transfer in violation of this paragraph will be void; provided, however, that upon notice to us, you may assign

or transfer this Agreement, in whole or in part, to any of your Affiliates as long as you remain liable for your obligations that arose prior to the effective date of the assignment or transfer under this Agreement. You agree that we may assign or transfer our rights and obligations under this Agreement: (a) in connection with a merger, consolidation, acquisition or sale of all or substantially all of our assets or similar transaction; or (b) to any Affiliate or as part of a corporate reorganization; and effective upon such assignment, the assignee will be deemed substituted as the party to this Agreement. Subject to the foregoing, this Agreement will be binding on, inure to, and be enforceable against the parties and their respective successors and assigns. We may perform any of our obligations or exercise any of our rights under this Agreement through one or more of our Affiliates.

d. **Revisions; Continued Use.** We reserve the right to change or supplement any of the terms of this Agreement, including the terms of the Program Policies or any other materials incorporated herein (unless otherwise specified by us in such materials), ("<u>New Terms</u>") at any time and in our sole discretion. Any changes will be effective upon the date which is fifteen (15) days after we notify you of the New Terms. You are responsible for reviewing any New Terms and any notices of New Terms. However, we may change, modify or terminate the Agreement at any time with immediate effect (i) for legal, regulatory, fraud and abuse prevention, or security reasons; (ii) to change existing terms or add additional terms related to selling the Products (where this does not materially adversely affect you); or (iii) to restrict Products or activities that we deem unsafe, inappropriate, or offensive. We will notify you about any change or modification in accordance with this Agreement. YOUR CONTINUED ACCEPTANCE OF PURCHASE ORDERS OR CONTINUED USE OF PARTNER HOME FOLLOWING ANY SUCH NOTICE OF NEW TERMS WILL CONSTITUTE YOUR ACCEPTANCE OF THE NEW TERMS. IF YOU DO NOT AGREE TO THIS AGREEMENT OR ANY NEW TERMS, YOUR SOLE REMEDY IS TO TERMINATE THIS AGREEMENT IN ACCORDANCE WITH SUBSECTION (D) OF SECTION 10 AND TO STOP ACCEPTING PURCHASE ORDERS.

e. **Third Party Beneficiaries.** This Agreement includes certain rights, benefits and remedies (together, the "<u>Beneficiary Rights</u>") for our affiliated companies and their respective officers, directors, employees, and agents (the "<u>Third Party Beneficiaries</u>"). In respect of the Beneficiary Rights: (i) we enter into this Agreement on our own behalf and as agent for the Third Party Beneficiaries; and (ii) we shall be entitled to enforce and/or pursue any claim for and on behalf of any Third Party Beneficiary ("<u>Beneficiary Claim</u>"). If for any reason we are unable to enforce and/or pursue a Beneficiary Claim then for the purposes of this Agreement all losses, liabilities, damages, costs, claims, charges and/or expenses ("<u>Losses</u>") of the applicable Third Party Beneficiary shall be treated as our Losses and shall be recoverable by us as if such Losses were our own. We may amend, terminate or rescind this Agreement (subject to its terms) without the consent of any Third Party Beneficiary.

f. **Other.** Either party's failure to enforce any provision of this Agreement will not be a waiver of the party's rights to subsequently enforce the provision. If any provision is held to be invalid, that provision will be modified to the extent necessary to make it enforceable, and any invalidity will not affect the remaining provisions. This Agreement incorporates and you hereby agree to the terms and conditions of the program policies attached hereto as <u>Schedule B</u> ("<u>Program Policies</u>"). To the extent there is a conflict between this Agreement, the Program Policies, or a purchase order, the conflict will be resolved by giving precedence in the order specified in such documents, or if not specified, the following order: the Program Policies, this Agreement, and the applicable purchase order. All notices, requests, consents, claims, demands, waivers, and other communications hereunder will be in writing and sent to the contacts designated in Partner Home or that you have otherwise indicated. For purposes of this Agreement, written notice includes email. We may also communicate with you electronically and in other media, and you consent to such communications. This Agreement, including the Program Policies and any applicable purchase order, is the entire agreement between Wayfair and you for the purchase and sale of Products, and supersedes all prior agreements and discussions and any terms later issued by you. We will not be liable for any delay or failure to perform any of our obligations under this Agreement by reasons, events or other matters beyond our reasonable control.

The parties expressly agree that this English language version of this Agreement (including all Program Policies) is definitive and that in the event of any dispute or controversy as to the proper interpretation and construction of this Agreement, the English version will prevail. If the Region is Canada, then it is the express wish of the parties that this Agreement and the applicable terms and Program Policies have been drafted in English. (The following is a French translation of the preceding sentence: Si la région est le Canada, les parties souhaitent expressément que le présent accord et les conditions et les politiques du programme applicables soient rédigés en anglais.) Any versions provided in other languages are for reference purposes only.

EXECUTED as of the date signed by the Supplier Entity.

| Supplier Entity | Wayfair Entities |
|---|---|
| | |
| SNAPSHOTS OF THE PAST | WAYFAIR LLC, a Delaware limited liability company |
| State/country of organization: ME US | By: /s/ Charlie Reichenbach |
| By: | Name: Charlie Reichenbach |
| | Title: Head of Supplier Onboarding |
| *James Lantos* | |
| Name: James Lantos | WAYFAIR STORES LIMITED, an Irish limited company |
| Authorized Representative | By: /s/ Charlie Reichenbach |
| | Name: Charlie Reichenbach |
| | Title: Head of Supplier Onboarding |

## SCHEDULE A

| Region | Wayfair Entity | Governing Laws | Governing Venue |
|---|---|---|---|
| U.S. | Wayfair LLC | The Federal Arbitration Act and federal law. Where otherwise applicable, the laws of the Commonwealth of Massachusetts. | In person in Suffolk County, MA, at a mutually agreed location; or at your option, via teleconference or written submissions. |
| Canada | Wayfair LLC | Ontario law | In person in Ontario, at a mutually agreed location; or at your option, via teleconference or written submissions. |

| Europe, including EEA UK and Switzerland | Wayfair Stores Limited | Irish law | Irish courts |

## SCHEDULE B

## Program Policies

Any capitalized terms used but not defined in these Program Policies shall have the meanings given to them in your Supplier Agreement (the "<u>Agreement</u>").

1. **Financial Terms and Additional Supplier Policies.** Financial terms, such as allowances, discounts, rebates, returns and other purchasing terms, terms for other supplementary services provided by Wayfair and its affiliates, as well as any additional supplier policies, will be specified in separate terms on Partner Home or provided by other approved means.

2. **Perigold Program Policies.** As set forth in the Agreement, the parties may mutually agree to limit the marketing and sale of Products to certain Sales Channels, Regions and Subregions from time to time, subject to compliance with Applicable Laws. If you are a Perigold supplier and you wish to limit Product sales to one or more Perigold Sales Channel, you must inform us of this request on Partner Home, or by other Wayfair approved means.

3. **Europe Region.**

   a. With respect to the sale of Products into the "Europe" Region listed on <u>Schedule A</u> to the Agreement:

      i. <u>Data Protection and Privacy</u>. Each party shall maintain Customer Information in strict compliance with the EU General Data Protection Regulation 2016/679 ("<u>GDPR</u>") and applicable national data protection laws. To the extent that the parties cooperate to provide a Product to Wayfair end-customers via dropship fulfillment by you to the end-customer ("<u>Dropship Fulfillment</u>"), Wayfair provides the end-customer's Customer Information to you solely for the purpose of satisfying your obligations to us and the end-customer with respect to Dropship Fulfillment. The parties agree that any "processing" (as defined in GDPR) in connection with Dropship Fulfillment is necessary in accordance with Art. 6.1(b) of GDPR. Each party shall remain "independent controllers" (as defined in GDPR) with respect to the Customer Information.

      ii. <u>Waste Directives</u>. You shall comply with Directive 2012/19/EU on waste electrical and electronic equipment and Directive 2006/66/EC on batteries and accumulators and waste batteries and accumulators and the corresponding national regulations, and Directive 94/62/EC on packaging and packaging waste and the corresponding national regulations.

      iii. <u>Handling Customer Cancellation Rights</u>. The Supplier undertakes to repurchase from Wayfair Products returned to Wayfair by customers exercising their statutory or contractual cancellation rights at the price paid by Wayfair to the Supplier (plus shipping costs incurred by Wayfair). Wayfair shall only be liable for a loss of value of these products to the extent that the customer would be liable to Wayfair.

      iv. <u>Subregion Sales Restrictions</u>.

         i. If a Supplier wishes to limit sales of its Products into certain Subregions in Europe in accordance with the Agreement, Supplier represents and warrants that such limitation is due to one or more of the following reasons:

            a. **Product and trade compliance:** Product does not meet local regulatory or import/export requirements (e.g. labeling or

language requirements).

    b. **Supplier operational limitations:** Supplier lacks of operational capabilities to ship to a geography (e.g. no compliant VAT treatment capability).

    c. **Supplier distributional limitations:** contractual or statutory requirements limiting the Supplier's distribution capabilities (e.g. copyright limitations, territorial restrictions of supply in compliance with European antitrust laws).

  ii. As required by the Agreement, you will inform us in Partner Home, or by other Wayfair approved means, of the Region(s) and Subregion(s) in which your Products (or any subset of Products or classes of Products, as applicable) are legally compliant and authorized to be offered for sale, as well as any limitations or restrictions on such sale in a particular Subregion. Supplier represents and warrants that any such Subregion sales restriction does not violate any provisions protecting the free movement of goods and is in compliance with the relevant provisions of European antitrust laws.

 b. **Germany Subregion.** With respect to the sale of products into Germany under the Agreement:

  i. <u>Packaging Act</u>. You shall comply with the Verpackungsgesetz (the German Packaging Act). To the extent that the parties cooperate to provide a Product to a Wayfair end-customer via Dropship Fulfillment, the parties mutually proceed on the basis that you, as the dispatcher of the Product, are the first distributor and therefore also the manufacturer of the transport packaging, unless Wayfair imports the products into Germany.





# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
| --- |
| 01/10/2024 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Lisa Merola | | |
| --- | --- | --- | --- |
| The Hilb Group of New England, LLC | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| 500 West Main Road | E-MAIL ADDRESS: lmerola@hilbgroup.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Middletown                    RI  02842 | INSURER A : Selective Insurance Group, Inc. | | |
| INSURED | INSURER B : | | |
| PROVIDENCE PICTURE FRAME CO - DRYDEN GALLERY LTD, | INSURER C : | | |
| 1350 MINERAL SPRING AVE | INSURER D : | | |
| | INSURER E : | | |
| NORTH PROVIDENCE         RI  02904-4629 | INSURER F : | | |

## COVERAGES   CERTIFICATE NUMBER: CL23101326123   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A | COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE ☒ OCCUR | Y | | S 2517514 | 10/01/2023 | 10/01/2024 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☒ POLICY ☐ PRO-JECT ☐ LOC OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | NON-OWNED AUTO CR | $ |
| | AUTOMOBILE LIABILITY ☐ ANY AUTO ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| A | ☒ UMBRELLA LIAB ☒ OCCUR ☐ EXCESS LIAB ☐ CLAIMS-MADE | Y | | | | | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | AGGREGATE | $ 1,000,000 |
| | ☒ DED ☐ RETENTION $ 10,000 | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | S 2517514 | 10/01/2023 | 10/01/2024 | ☐ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Wayfair Inc, Wayfair LLC and Wayfair Stores Limited and their respective officers, directors and employees and all successors and premitted assigns are included as additional insured on a primary, non-contributory basis as it pertains to General Liability and Umbrella as required by written contract.

| CERTIFICATE HOLDER | CANCELLATION |
| --- | --- |
| Wayfair Inc, Wayfair LLC and Wayfair Stores Limited 4 Copley Place Boston                    MA  02116 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Lisa A Merola* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

# WAYFAIR – LANTOS
# ONBOARDING EMAIL THREAD

**From:** New Partner Onboarding <newpartneronboarding@wayfair.com>
**Sent:** Monday, December 18, 2023 8:05 AM
**To:** snapshotspast@gmail.com
**Subject:** Create your account in Partner Home today





# We're excited to explore a partnership opportunity with you!

We've taken a look at your product assortment and are excited about what a partnership with Wayfair could look like for your business! To get started with initial onboarding requirements, please use the link below to create your account in Partner Home.

**Create Your Partner Home Account**

After you create your account, you will receive an email with your login information for Partner Home. If you don't see the email in your inbox, check your spam folder. Please let us know if you do not receive your login details or you have any issue logging in to the portal.

## Your Onboarding Overview:
### Create your Account and Get Started

**Complete Business Setup**
Provide your Business information, Selling Location, and learn more about Wayfair's partner requirements.





## Build your Partner Home Account

- **Partnership Agreement**
- **Product Liability Insurance**
- **Payments and Terms**
- **Order & Inventory Management**
- **Contacts**
- **Order Fulfillment**
- **Product Catalog**

## Business Review

Wayfair will review your business information and products in accordance with our quality requirements:

1. **Minimum of 10 unique products added to your catalog**
2. **Minimum of 3 high quality images per product**
3. **Call scheduled with your dedicated Onboarding Success Coach**





## Account Setup

Wayfair creates your SKU pages and completes your Inventory Setup - manual or automated.

## Questions?

Our Onboarding team will support you throughout the onboarding process, and will reach out if additional verification is needed. If you have any questions, you can reach out via the Contact Us button in Partner Home.

- New Partner Onboarding

 ONBOARDING

This message was sent to snapshotspast@gmail.com. .

Wayfair Onboarding, Wayfair Inc., 4 Copley Place, Floor 7, Boston, MA 02116

**From:** New Partner Onboarding <newpartneronboarding@wayfair.com>
**Sent:** Tuesday, December 19, 2023 8:30 AM
**To:** James Lantos <snapshotspast@gmail.com>
**Subject:** You completed the Wayfair Supplier Partnership Agreement

 PARTNER

My Account



## PARTNER ONBOARDING

Hi ,

Thanks for completing the Wayfair Supplier Partnership Agreement. Take a look at it **here**, and reply to this email if you have any questions.

-New Partner Onboarding

**Was this content helpful to you?**

**War dieser Inhalt hilfreich für Sie?**
**Czy ta treść była dla Ciebie pomocna?**
此内容是否对您有帮助？

**¿Le ha resultado útil este contenido?**
**Ritiene che questo contenuto sia stato utile?**
**Ce contenu vous a-t-il été utile ?**

   

## Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | **Return Question (SAONPO-35440)** |
|---------|-------------------------------------|
| From | New Partner Onboarding |

| To | snapshotspast@gmail.com |
|------|----------------------------------|
| Sent | Friday, January 12, 2024 3:56 PM |

Hi James,

Thanks for your reply! Please see the responses after each of your questions.

**1.** We make print on demand custom framed art/photos. We do not have UPC codes. Private label. However, we can provide Amazon ASINs for all SKUs. Will this be ok? Otherwise we may need an exemption from UPC as we were granted on Amazon and Walmart.

**Answer:** Please be advised that If you do not have the UPCs for your product, you may not provide them anymore, as this information is not mandatory. The absence of this information would only trigger an orange warning. However, this should not hinder you from submitting the project.

**2.** The full feed maybe several hundred MB big. Is that ok to upload to your system or do you need us to FTP the file?

**Answer:** It is indeed okay.

**3.** I need to kindly ask for an exemption on ship time. We need 10 days to ship. Printing is easy. Custom framing to order fits into our existing production schedule of other work we do and requires the longer time. This may be able to be reduced depending on the volume we see on Wayfair over time. But for starters we will need 10 days. That value will not enter into your sample data feed template.

**Answer:** There is no specific lead time that is required for our partners. We recommend trying to adhere to a 48 hour lead time, however, we understand this is not feasible for all partnerships. Therefore, we just ask that you are setting accurate lead times for our customers when you are fulfilling your orders. Hopes this clarifies. Let us know if you have any other questions.

Best,
Jim
**NEW PARTNER ONBOARDING**

# RE: Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | **RE: Return Question (SAONPO-35440)** |
|---------|----------------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Cc | Jarrett Wold |
| Sent | Friday, January 12, 2024 4:16 PM |

(WAYFAIR Q/A)

Hi

Thanks.

So to clarify, I cannot enter 10 days into the leadtime box.  So I should just enter 2 days and if it takes 10 days—that is the way it will be?  Will I be penalized if I am constantly shipping things 10 days?  I only ask b/c Amazon lets you set turnaround time and then if you do not meet that, they flag you in their metrics area.
Alternatively, if the product page says 2 days and we are constantly shipping at 10 days then I gather this may draw negative feedback over time.

Is there a way to enter the value of 10 days into the spreadsheet/datafeed?  Currently it will now allow this.

Let me know.

TY

| Subject | Return Question (SAONPO-35440) |
|---------|-------------------------------|
| From | New Partner Onboarding |
| To | snapshotspast@gmail.com |
| Sent | Monday, January 15, 2024 1:08 PM |

Hi James,
Yes! Kindly provide only the information being asked using the only option available in the system.
Please know also, that you won't be penalized for anything.
Should you have any other questions, please let us know.

Best,
Jim
**NEW PARTNER ONBOARDING**

# RE: Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | RE: Return Question (SAONPO-35440) |
|---------|-------------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Cc | Jarrett Wold |

| Sent | Sunday, March 3, 2024 3:39 AM |
|------|-------------------------------|

Hi again

So I finally was able to format a test upload of 10 records.  It looks like it succeeded.  But I cant tell.  I don't see any errors in the upload message area.  Can you confirm this upload worked?  Are the products listed?  LMK.  TY

Jim

### My Uploads

| File Id | File Name | Errors | Warnings | Ready | Submitted | Date Uploaded | ⓘ | ⓘ |
|---------|-----------|--------|----------|-------|-----------|---------------|----|----|
| 186665 | 3-2-24 Wayfair Test 10 Records.xlsx ◇ | | | | | | Dismiss Error | |

# Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | **Return Question (SAONPO-35440)** |
|---------|-----------------------------------|
| From | New Partner Onboarding |
| To | snapshotspast@gmail.com |
| Sent | Tuesday, March 5, 2024 5:12 AM |

Hi James,
Thanks for your reply! Apologies for the inconvenience. I can't seem to find the project you created for your submitted Item specification sheet.
Would you be able to retry uploading it online? I just want to know I have the right process in place for you.
Your response would be much appreciated. Let us know if you have any other questions.

Best,
Jim
**NEW PARTNER ONBOARDING**

| Subject | RE: Return Question (SAONPO-35440) |
|---------|-----------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Tuesday, March 5, 2024 7:04 AM |

Oops

I had the wrong header with my upload.  I tried again.  It is still giving us errors for all items.  Strange.  Why would it be erroring on the brand?
The other ones, I'm not sure what to do.  We tried to correct the errors noted in the first feed.

Let me know

Jim

**My Uploads**

| File Id | File Name | Errors | Warnings | Ready | Submitted | Date Uploaded | ⓘ | ⓘ |
|---------|-----------|--------|----------|-------|-----------|---------------|---|---|
| 188155 | 3-2-24 Wayfair Test 10 Records.xlsx | 11 | 0 | 0 | 0/11 | 3/5/2024 | ⬇ Download Review | Submit |
| 186665 | 3-2-24 Wayfair Test 10 Records.xlsx ⬦ | | | | | | Dismiss Error | |
| 176066 | 2-19-24 Sample - Product Addition Template - [01.11.2024].xlsx | 5 | 0 | 0 | 0/5 | 2/19/2024 | ⬇ Download Review | Submit |

# RE: Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | RE: Return Question (SAONPO-35440) |
|---------|-----------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Thursday, March 7, 2024 8:56 PM |

Just following up to see if you can help with this issue.

Upload succeeded.  Still giving 11 errors.

# Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | Return Question (SAONPO-35440) |
|---------|-------------------------------|
| From | New Partner Onboarding |
| To | snapshotspast@gmail.com |
| Sent | Monday, March 11, 2024 2:20 AM |

Hi James,
Thanks for your reply! Apologies for the inconvenience. I have communicated internally regarding this concern/s you raised. Please be assured I'll send a follow-up on this matter and I'll get back to you as soon as I hear from them.
We thank you for your patience and kind understanding!

Best,
Jim
**NEW PARTNER ONBOARDING**

# RE: Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | RE: Return Question (SAONPO-35440) |
|---------|-----------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Thursday, March 21, 2024 4:15 PM |

Just checking back 😊 ...

# Re: Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | Re: Return Question (SAONPO-35440) |
| --- | --- |
| From | Snapshots Of The Past |
| To | newpartneronboarding@wayfair.com |
| Sent | Friday, March 22, 2024 2:43 PM |

I may have a possible solution.
I did something with Walmart and maybe you could help me with this similarly as well. Basically I could provide you with the entire date of feed. I have 300,000 products. Using the last format that I just sent you a sample feed of.
maybe then you guys could go and tweak it and upload it for me? Would that work? That's what Walmart did. I sent them my entire Amazon feed and they kind of tweaked it and did all the uploading for me. That seems like the quicker way than waiting several weeks to go back-and-forth and figure this out with a tiny test feed.
let me know if that works. If so, I can send you the file using WeTransfer. Or I can post it to FTP. Or if you give me an FTP, I can upload it to your site.
On Thu, Mar 21, 2024 at 4:15 PM <snapshotspast@gmail.com> wrote:
Just checking back 😊 ...

# Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | Return Question (SAONPO-35440) |
| --- | --- |
| From | New Partner Onboarding |
| To | snapshotspast@gmail.com |
| Sent | Tuesday, March 26, 2024 10:44 PM |
| Attachments | <<3-2-24 Wayfair Test 10 Records (1).xlsx>> |

Hi James,
Thanks for expressing your concern! Apologies for not getting back to you sooner and for the inconvenience.  Please know that we only have one way to start the process of SKU Addition and that it to utilize the item specification sheet and upload it via Quick upload.

Checking your account, it appears that the error is in the Brand Name cell/column. Kindly add your Brand information into the system first and correct the errors appearing in the item specification sheet I attached.
You must add a new brand and associate by filling out the Create new brand form. Kindly click the link below to proceed with the process.
Link: https://partners.wayfair.com/d/sccontent-supplier-brand-app
Hopes this clarifies. Let us know if you have any other questions.

Best,
Jim
**NEW PARTNER ONBOARDING**

| Subject | **RE: Return Question (SAONPO-35440)** |
|---------|----------------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Tuesday, April 2, 2024 11:07 AM |

Hi

Many thanks.

I tried to click the link.  It is now asking me to reset my PW.  So I requested a new PW.  But I have not gotten the email with the new PW.

<Sigh> 😊

Can you help me untangle?

TY

Jim

| Subject | **RE: Return Question (SAONPO-35440)** |
|---------|----------------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Tuesday, April 2, 2024 11:08 AM |

There are also other red cell errors in other areas.  Did you notice those?  Any advice on how to fix those?
Many of them we have no information to provide.

Thanks

| Subject | **RE: Return Question (SAONPO-35440)** |
|---------|----------------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Tuesday, April 2, 2024 11:12 AM |

Oops...now I got the password reset email.  All good.  But still need your guidance on other red/invalid cells/fields.

So when I click the link you provided below, it brings me back to the partner onboarding screen.  I have filled out everything on this screen already.  I entered the brand name several months ago.  Below is a screen shot.

The problem seems to be that the system is not accepting the spreadsheet and the same brand name.

Can you further advise?

TY



## Business Information

| ⊘ Your business information has been verified! | × |

**Registered business location**
United States of America
ME

**Business registration information**
92-1387340

**Business name**
SNAPSHOTS OF THE PAST

**Business phone number**
+1 781-728-9554

**Business headquarters**
299 MAIN STREET
UNIT 229
NORWAY, ME 04268
United States of America (US)

**Selling region**
United States
(www.wayfair.com)

**Additional selling region(s)**
No Additional Regions

# Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | **Return Question (SAONPO-35440)** |
|---------|-----------------------------------|
| From | New Partner Onboarding |
| To | snapshotspast@gmail.com |
| Sent | Tuesday, April 2, 2024 1:01 PM |

Hi James,
Thanks for your reply! Apologies for not getting back to you sooner and for the inconvenience.
Upon checking, it appears that No brand associations currently exist for your account.
Therefore, you must add a new brand and associate by filling out the Create new brand form. Kindly
click the link below to proceed with the process.
Link: https://partners.wayfair.com/d/sccontent-supplier-brand-app
Hopes this clarifies. Let us know if you have any other questions.

Best,

Jim
**NEW PARTNER ONBOARDING**

**From:** New Partner Onboarding <newpartneronboarding@wayfair.com>
**Sent:** Wednesday, April 3, 2024 2:59 PM
**To:** snapshotspast@gmail.com
**Subject:** Return Question (SAONPO-35440)

Hi James,
Thanks for your reply! Apologies for the inconvenience. To fix the errors in your Item Specification sheet, click the cell as it has instructions on how to fix the errors in the cells. Please see the attached file for your reference.
Hopes this helps. Let us know if you have any other questions.

Best,
Jim
**NEW PARTNER ONBOARDING**

# RE: Return Question (SAONPO-35440)

Monday, May 6, 2024
10:53 AM

| Subject | **RE: Return Question (SAONPO-35440)** |
|---|---|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Tuesday, April 2, 2024 3:13 PM |
| Attachments | <<3-2-24 Wayfair Test 10 Records (4-2-24 Error Report).xlsx>> |

Ok! Succeeded. TY.

I uploaded the test feed of 10 records again.  All records came up as errors (again).

The brand succeeded.  But there are a number of other fields that are showing red errors.

We either provided answers for these fields or don't have answers / the fields aren't relevant to our products / answers we would like to provide cannot be entered into the fields.

Can you give me specific instructions on how to address the problems with each of the 10 or so error fields showing up in Red?  Otewise, we don't know how to proceed.

LMK

TY

Jim

| Subject | RE: Return Question (SAONPO-35440) |
|---------|-----------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Friday, April 5, 2024 12:27 PM |

Ok

I fixed the errors.

But now when I login to the Partner Onboarding, seems like my id/pw have expired.  It is not logging me in.

I hope I don't have to go through setting up all the screens again.  Can you kindly reactivate?  I am ready to upload the fixed feed.

TY

| Subject | RE: Return Question (SAONPO-35440) |
|---------|-----------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Monday, April 8, 2024 9:12 PM |

Hi just following up.

I have fixed the test feed as per your latest instructions.  But I am not able to login to the partner dashboard.
When I enter my credentials, the screen just resets as if the credentials have expired.

Can you kindly check the system to allow me to keep going with this?  Hate to see months of work to get things going down the drain.

I am interested in working with you guys and listing our 300K SKUs of framed art with Wayfair.

Thank you.

| Subject | **RE: Return Question (SAONPO-35440)** |
|---------|----------------------------------------|
| From | snapshotspast@gmail.com |
| To | newpartneronboarding@wayfair.com |
| Sent | Friday, April 12, 2024 6:19 PM |

Jim

Im a bit confused.   It seems like my login credentials have expired or have been turned off.  Can you explain why this is the case?
You emailed me a week ago to advise me on how to correct deficiencies in the test feed I was trying to upload.

For reference, about my company, Snapshots of the Part:

1.  I sold 7 figures of product (framed art) selling on Amazon for 10 years from 2006 – 2016.  With no advertising.

2.  I restarted my company after a 7-year hiatus, last year, seeing the post pandemic opportunity and growth with online home furnishings sales.

3.  I am currently selling on Amazon and Walmart.  I spent much of 2023 working to get my products listed on these two websites.   Thus, spending a 2-3 months getting on board with Wayfair seemed to me to be a normal procedure.  I have 300K SKUs of historical art and photography for sale @$298 / item on each site.

a. Amazon listings
b. Walmart listings

4.  Below is a schedule of my sales since November.   This is with no advertising.

5.  I am about to open up an Amazon Store where I will undertake PPC ads on Amazon. I expect this to vault sales quickly into 6 figures.

6.  I am finishing a standalone website where I will be doing the same with Google PPC.

7.  I expect my products will do well on Wayfair which is why I applied to sell there.

I'm not sure whether you have "dinged" me in terms of expiring my login / approval to sell on Wayfair but if so, this seems a mistake.  I've been extensively mired in getting my other business activities in order for the past year.  The process of getting the Wayfair test datafeed in order has been complicated but I have not given up on it.  I have the test feed of 10 records ready to upload with corrected records you advised me to fix last week.

I apologize I have not been able to get this done sooner but I've been trying to manage about 20 different projects at once.

I hope you will reconsider and reactivate the onboard portal so I can finish getting online with Wayfair.  The supplier who produces our products went out of their way to provide the insurance documentation you require for new partners.   It seems somewhat a waste to not be able to work together given the mutual synergies / strengths.

Thanks for your consideration.

(Graph of my sales on Amazon on Walmart the past few months –omitted)

**jim@jimlantos.com**

| | |
|---|---|
| **From:** | Peter Forster <pefo0128@outlook.com> |
| **Sent:** | Tuesday, June 11, 2024 4:26 PM |
| **To:** | Jim L |
| **Subject:** | Fwd: Snapshots of the Past Demand Letter |

Get Outlook for Android

**From:** Samantha Fowler <sfowler1@wayfair.com>
**Sent:** Tuesday, June 11, 2024 2:24:30 PM
**To:** Pefo0128@outlook.com <Pefo0128@outlook.com>
**Subject:** Snapshots of the Past Demand Letter

Good morning Mr. Forster,

I received your letter regarding Snapshots of the Past ("Snapshots"). Snapshots was flagged through our internal system as potentially fraudulent. The information input contained several red flags:

1. Email Address: the email address did not match the company website or the contact person (snapshotspast@gmail.com)
2. Phone number/Email match: Its important that the phone number and email address provided match the website provided. In this case, Snapshots provided its amazon page which did not list a phone or email so no match could be made.
3. Company address: Snapshots provided two addresses - 299 Main St. and 1350 Mineral Springs Ave. These addresses did not match a registered business.

Because of these flags, Snapshots did not pass our Know Your Business test. Wayfair is not required to activate suppliers that do not pass our business checks nor are we required to continue the onboarding process if the business is deemed not to be a good fit. For these reasons, Wayfair is not moving forward with Snapshots partnership.

I appreciate your understanding.

Best,

**SAMANTHA FOWLER**
Counsel, Litigation
Pronouns: she/her

**jim@jimlantos.com**

| | |
|---|---|
| **From:** | jim@jimlantos.com |
| **Sent:** | Tuesday, June 11, 2024 6:22 PM |
| **To:** | sfowler1@wayfair.com |
| **Cc:** | 'Peter Forster' |
| **Subject:** | FW: Snapshots of the Past Demand Letter |
| **Attachments:** | 5-1-23  Lantos PPF Agreement003.pdf |

Ms. Fowler:

My name is James Lantos.  I am the owner of a company Snapshots of the Past, inc.  I received your response letter to a demand letter sent by my attorney today, Peter Forster, regarding the issue of your breach of our contract I signed as an onboarding supplier back in December 2023.  I wanted to reply to your letter directly as your response / rebuttal to my claim against you is clearly flawed on many points.

Please see my comments below:

**From:** Peter Forster pefo0128@outlook.com
**Sent:** Tuesday, June 11, 2024 4:26 PM
**To:** Jim L jim@jimlantos.com
**Subject:** Fwd: Snapshots of the Past Demand Letter

Get Outlook for Android

**From:** Samantha Fowler <sfowler1@wayfair.com>
**Sent:** Tuesday, June 11, 2024 2:24:30 PM
**To:** Pefo0128@outlook.com <Pefo0128@outlook.com>
**Subject:** Snapshots of the Past Demand Letter
Good morning Mr. Forster,

I received your letter regarding Snapshots of the Past ("Snapshots"). Snapshots was flagged through our internal system as potentially fraudulent. The information input contained several red flags:

....Despite what you are saying, it remains clear that you did not give me 60 days' notice of termination of my access to the onboarding portal around the beginning of April.  As you know, this is required by the onboarding contract.

10. **Termination and Survival**. Either party may terminate this Agreement with 60 days' prior written notice. Regardless of any termination, you will fulfill all orders you accepted before the effective date of termination unless prohibited by Applicable Law. Any terms that by their nature should reasonably be expected to survive termination shall so survive, including Section 3 (Product Information), Section 4 (Product Safety and Compliance; Product Recalls; and Supplier Audit), Section 5 (User Accounts and Representations), Section 6 (Supplier Defense and Indemnification), Section 7 (Limitation of Liability), Section 8 (Insurance), Section 9 (Confidential Information; Publicity; and Privacy), Section 10 (Termination and Survival), and Section 11 (Miscellaneous).

1. Email Address: the email address did not match the company website or the contact person (snapshotspast@gmail.com)

....Im not sure what you are talking about.  The email address ~~snapshotsofthepast@gmail.com~~ snapshotspast@gmail.com is the contact email for my company.  I registered with your onboarding system with this email.  This email is listed as a contact email on my company website: www.snapshotsofthepast.com.  (You can find it on the privacy policy page).

This website was not "live" when I applied to become a seller with Wayfair in December 2023 (it only has gone live in the past 2 months.  But you obviously could have found it through a simple web search had you did not bother to do that before sending your reply).  At the time I applied for partnership with your company, I only had listings on Amazon.  When I filled out your application to become a supplier I listed some Amazon product pages as my sample listings.  You accepted these.  If you did any cursory investigation on Amazon by simply clicking my company name on any of my Amazon product pages, you would have been directed to an "About" page where, if you scroll down, it lists my company address in Maine, the same address I gave you as the location of my company: 299 Main Street, Unit 299, Norway, Maine, 04268.

This is a sample product page from Amazon:
https://www.amazon.com/Historic-Framed-Williams-shaking-dugout/dp/B0CNG432HG?ref_=ast_sto_dp

If you were to have clicked on the right on any of the product pages I gave you as example in my application, where it says "Sold by Snapshots of the Past", it would bring you to the Amazon About page for my company, which looks like this:

https://www.amazon.com/sp?ie=UTF8&seller=A3TN84JWOAHYK1&asin=B0CNG432HG&ref_=dp_merchant_link

....As you can see in the middle of the page, my Maine company address is listed.

.....You have obviously not bothered to do this which is also evident in your flawed analysis.

2. Phone number/Email match: Its important that the phone number and email address provided match the website provided. In this case, Snapshots provided its amazon page which did not list a phone or email so no match could be made.

...My company phone is 781-728-9554.   I provided this on your application.

## Business Information



Your business information has been verified!                                                            ×

**Registered business location**
United States of America
ME

**Business registration information**
92-1387340

**Business name**
SNAPSHOTS OF THE PAST

**Business phone number**
+1 781-728-9554

**Business headquarters**
299 MAIN STREET
UNIT 229
NORWAY, ME 04268
United States of America (US)

**Selling region**
United States
(www.wayfair.com)

**Additional selling region(s)**
No Additional Regions

..Amazon does not make public my company telephone number. They do provide customers a way to email me / my company if they have support questions. I also do not make public my company on my own website due to the extensive preponderance of spam I receive when I do have the numbers listed there. Customers can easily contact me through the contact form on Amazon or my website and I will receive their emails. Your / our contract says nothing about the need to provide a company phone number listed on a website for my products. All you had to do was ask me during the onboarding process about this and I would have told you what I am telling you now.

3. Company address: Snapshots provided two addresses - 299 Main St. and 1350 Mineral Springs Ave. These addresses did not match a registered business.

....My company, which was originally founded in 2001, was most recently registered as a corporation in Maine in January 2023 (where I relocated in 2022). You can quite easily check the Maine corporation registry where you will find my listing there noted as "Active". I am listed as the registered agent for the company and that is something you would have seen had you done this check as well. There, you will also find my company address as noted above, in Norway, Maine. You obviously did not bother to make this check despite this information is free and easy to find over the Internet. I believe you can also verify my company information over the Internet by doing an EIN number lookup as well. You didn't do that either.

....I have one major contracting vendor I work with who does fulfillment work to manufacture prints and framed prints. Their name is Providence Picture Frame (https://providencepictureframe.com/) and they are located at the address on Mineral Spring Avenue in Providence. I am attaching an agreement, dated 5/1/23, which references our relationship. I do believe I noted this company as a supplier on your application portal. Since they are performing the manufacturing of my products in their Providence

facility, they were kind enough to provide their liability insurance certificate, which they referenced in your name, as evidence of the insurance coverage you require.  I submitted this insurance certificate to you with my demand letter.  There is no issue of fraud whatsoever and had you just done some simple homework to see that I referenced this company in your onboarding application and cross checked their address, you would have had no issue with the Mineral Spring address.  As well, all you had to do was ask me about this and I would have explained it to you.  Instead you have chosen to grossly distort and twist facts, after that fact,  in a way that is not reflective of the truth of this situation.

Because of these flags, Snapshots did not pass our Know Your Business test. Wayfair is not required to activate suppliers that do not pass our business checks nor are we required to continue the onboarding process if the business is deemed not to be a good fit. For these reasons, Wayfair is not moving forward with Snapshots partnership.

...Your reasoning is flimsy, weak and unjustified.  Although your / our contract indicates you can terminate due to fraud, I have not committed any fraud whatsoever.  You, however, terminated our agreement at the beginning of April by terminating my access to your onboarding portal without giving me the required 60 days notice.  You never gave me any notice about this "Know Your Business" test within the 60 days you were required to notify me of termination of our contract.  Had you simply asked me of your concerns, I would have clearly pointed out the information I am giving you now.  And you would have seen there is no fraud and no misunderstanding as you are trying to characterize about all this now.

..I hope this clears up your misunderstanding.

...It does not.

.....Despite all this, I still am interested in selling on your site.  I have been selling framed pictures for many years and I have a good reputation in the industry as a quality supplier of historical imagery as wall décor reproductions.  I hope you will do the right things and restart the onboarding process in the next 7 days.  Otherwise I will with 100% certainty file suit against you for breach of contract.  I will provide the evidence I am submitting to you in this letter as proof / evidence to support my case.

.....And I hope you realize that by providing a flawed response that distorts the truth of what has gone on here, that will be seen in court in Massachusetts as a "bad faith" gesture on your part.  It will most certainly increase my ability to claim consumer fraud, 93A, three times damages for my claims.

...Alternatively, I will accept a settlement of $20,000 to compensate me for my time invested into this partnership, as I noted in my demand letter.  And to agree not to litigate if you are still unwilling to work with me as we agreed.

... I think you may agree, you have not done any diligence in this matter and it seems like your onboarding technician made some erroneous decision to block my access from the onboarding process without being mindful that I had a contract with you.  To try to escape that reality, you now seem to have just come up with this flawed reasoning after the fact trying to make some sense of all this to your favor.   That is not going to pass muster if this goes to court.

....I was honest and straightforward in my application.  I did not commit any fraud whatsoever.  I looked forward to working with you.  You have not treated me with the same respect and courtesy.  Yet, still, I am happy to work with you if we can move past your misunderstandings.

I appreciate your understanding.

..And I appreciate your understanding and consideration and look forward to your response within 7 days of how you will resolve this matter, hopefully, amicably.

....Thank you.

Jim Lantos

Best,


Jim Lantos

Best,

**SAMANTHA FOWLER**
Counsel, Litigation
Pronouns: she/her



---

**From:** Peter Forster <pefo0128@outlook.com>
**Sent:** Tuesday, June 11, 2024 4:26 PM
**To:** Jim L <jim@jimlantos.com>
**Subject:** Fwd: Snapshots of the Past Demand Letter


Get Outlook for Android

---

**From:** Samantha Fowler <sfowler1@wayfair.com>
**Sent:** Tuesday, June 11, 2024 2:24:30 PM
**To:** Pefo0128@outlook.com <Pefo0128@outlook.com>
**Subject:** Snapshots of the Past Demand Letter

Good morning Mr. Forster,

I received your letter regarding Snapshots of the Past ("Snapshots"). Snapshots was flagged through our internal system as potentially fraudulent. The information input contained several red flags:

1. Email Address: the email address did not match the company website or the contact person (snapshotspast@gmail.com)

5

2. Phone number/Email match: Its important that the phone number and email address provided match the website provided. In this case, Snapshots provided its [amazon](#) page which did not list a phone or email so no match could be made.

3. Company address: Snapshots provided two addresses - 299 Main St. and 1350 Mineral Springs Ave. These addresses did not match a registered business.

Because of these flags, Snapshots did not pass our Know Your Business test. Wayfair is not required to activate suppliers that do not pass our business checks nor are we required to continue the onboarding process if the business is deemed not to be a good fit. For these reasons, Wayfair is not moving forward with Snapshots partnership.

I appreciate your understanding.

Best,

**SAMANTHA FOWLER**
Counsel, Litigation
Pronouns: she/her

## jim@jimlantos.com

| | |
|---|---|
| **From:** | jim@jimlantos.com |
| **Sent:** | Wednesday, June 12, 2024 6:29 AM |
| **To:** | sfowler1@wayfair.com |
| **Cc:** | 'Peter Forster' |
| **Subject:** | RE: Snapshots of the Past Demand Letter |

For reference, you might want to read these articles about my company before you accuse me / my company of being / acting fraudulent.  These will also be presented in court if this case must be litigated.

History of the Company - https://snapshotsofthepast.com/history-of-the-company/
Testimonials - https://snapshotsofthepast.com/testimonials/

My company was originally founded in Pittsburgh, in 2001.  This was one or two years before Wayfair was founded in Boston.

**From:** jim@jimlantos.com <jim@jimlantos.com>
**Sent:** Tuesday, June 11, 2024 6:22 PM
**To:** sfowler1@wayfair.com
**Cc:** 'Peter Forster' <pefo0128@outlook.com>
**Subject:** FW: Snapshots of the Past Demand Letter

Ms. Fowler:

My name is James Lantos.  I am the owner of a company Snapshots of the Past, inc.  I received your response letter to a demand letter sent by my attorney today, Peter Forster, regarding the issue of your breach of our contract I signed as an onboarding supplier back in December 2023.  I wanted to reply to your letter directly as your response / rebuttal to my claim against you is clearly flawed on many points.

Please see my comments below:

**From:** Peter Forster pefo0128@outlook.com
**Sent:** Tuesday, June 11, 2024 4:26 PM
**To:** Jim L jim@jimlantos.com
**Subject:** Fwd: Snapshots of the Past Demand Letter

Get Outlook for Android

**From:** Samantha Fowler <sfowler1@wayfair.com>
**Sent:** Tuesday, June 11, 2024 2:24:30 PM
**To:** Pefo0128@outlook.com <Pefo0128@outlook.com>
**Subject:** Snapshots of the Past Demand Letter
Good morning Mr. Forster,

I received your letter regarding Snapshots of the Past ("Snapshots"). Snapshots was flagged through our internal system as potentially fraudulent. The information input contained several red flags:

....Despite what you are saying, it remains clear that you did not give me 60 days' notice of termination of my access to the onboarding portal around the beginning of April.  As you know, this is required by the onboarding contract.

> 10.  **Termination and Survival.** Either party may terminate this Agreement with 60 days' prior written notice. Regardless of any termination, you will fulfill all orders you accepted before the effective date of termination unless prohibited by Applicable Law. Any terms that by their nature should reasonably be expected to survive termination shall so survive, including Section 3 (Product Information), Section 4 (Product Safety and Compliance; Product Recalls; and Supplier Audit), Section 5 (User Accounts and Representations), Section 6 (Supplier Defense and Indemnification), Section 7 (Limitation of Liability), Section 8 (Insurance), Section 9 (Confidential Information; Publicity; and Privacy), Section 10 (Termination and Survival), and Section 11 (Miscellaneous).

1. Email Address: the email address did not match the company website or the contact person (snapshotspast@gmail.com)

snapshotspast@gmail.com

....Im not sure what you are talking about.  The email address ~~snapshotsofthepast@gmail.com~~ is the contact email for my company.  I registered with your onboarding system with this email.  This email is listed as a contact email on my company website: www.snapshotsofthepast.com.  (You can find it on the privacy policy page).

This website was not "live" when I applied to become a seller with Wayfair in December 2023 (it only has gone live in the past 2 months.  But you obviously could have found it through a simple web search had you did not bother to do that before sending your reply).  At the time I applied for partnership with your company, I only had listings on Amazon.  When I filled out your application to become a supplier I listed some Amazon product pages as my sample listings.  You accepted these.  If you did any cursory investigation on Amazon by simply clicking my company name on any of my Amazon product pages, you would have been directed to an "About" page where, if you scroll down, it lists my company address in Maine, the same address I gave you as the location of my company: 299 Main Street, Unit 299, Norway, Maine, 04268.

This is a sample product page from Amazon:
https://www.amazon.com/Historic-Framed-Williams-shaking-dugout/dp/B0CNG432HG?ref_=ast_sto_dp

If you were to have clicked on the right on any of the product pages I gave you as example in my application, where it says "Sold by Snapshots of the Past", it would bring you to the Amazon About page for my company, which looks like this:

https://www.amazon.com/sp?ie=UTF8&seller=A3TN84JWOAHYK1&asin=B0CNG432HG&ref_=dp_merchant_link

....As you can see in the middle of the page, my Maine company address is listed.

.....You have obviously not bothered to do this which is also evident in your flawed analysis.

2. Phone number/Email match: Its important that the phone number and email address provided match the website provided. In this case, Snapshots provided its amazon page which did not list a phone or email so no match could be made.

...My company phone is 781-728-9554.   I provided this on your application.



..Amazon does not make public my company telephone number. They do provide customers a way to email me / my company if they have support questions. I also do not make public my company on my own website due to the extensive preponderance of spam I receive when I do have the numbers listed there.  Customers can easily contact me through the contact form on Amazon or my website and I will receive their emails. Your / our contract says nothing about the need to provide a company phone number listed on a website for my products.  All you had to do was ask me during the onboarding process about this and I would have told you what I am telling you now.

3. Company address: Snapshots provided two addresses - 299 Main St. and 1350 Mineral Springs Ave. These addresses did not match a registered business.

....My company, which was originally founded in 2001, was most recently registered as a corporation in Maine in January 2023 (where I relocated in 2022). You can quite easily check the Maine corporation registry where you will find my listing there noted as "Active".  I am listed as the registered agent for the company and that is something you would have seen had you done this check as well.  There, you will also find my company address as noted above, in Norway, Maine.  You obviously did not bother to make this check despite this information is free and easy to find over the Internet. I believe you can also verify my company information over the Internet by doing an EIN number lookup as well.  You didn't do that either.

....I have one major contracting vendor I work with who does fulfillment work to manufacture prints and framed prints. Their name is Providence Picture Frame (https://providencepictureframe.com/) and they are located at the address on Mineral Spring Avenue in Providence. I am attaching an agreement, dated 5/1/23, which references our relationship. I do believe I noted this company as a supplier on your application portal. Since they are performing the manufacturing of my products in their Providence facility, they were kind enough to provide their liability insurance certificate, which they referenced in your name, as evidence of the insurance coverage you require. I submitted this insurance certificate to you with my demand letter. There is no issue of fraud whatsoever and had you just done some simple homework to see that I referenced this company in your onboarding application and cross checked their address, you would have had no issue with the Mineral Spring address. As well, all you had to do was ask me about this and I would have explained it to you. Instead you have chosen to grossly distort and twist facts, after that fact, in a way that is not reflective of the truth of this situation.

Because of these flags, Snapshots did not pass our Know Your Business test. Wayfair is not required to activate suppliers that do not pass our business checks nor are we required to continue the onboarding process if the business is deemed not to be a good fit. For these reasons, Wayfair is not moving forward with Snapshots partnership.

...Your reasoning is flimsy, weak and unjustified. Although your / our contract indicates you can terminate due to fraud, I have not committed any fraud whatsoever. You, however, terminated our agreement at the beginning of April by terminating my access to your onboarding portal without giving me the required 60 days notice. You never gave me any notice about this "Know Your Business" test within the 60 days you were required to notify me of termination of our contract. Had you simply asked me of your concerns, I would have clearly pointed out the information I am giving you now. And you would have seen there is no fraud and no misunderstanding as you are trying to characterize about all this now.

..I hope this clears up your misunderstanding.

...It does not.

.....Despite all this, I still am interested in selling on your site. I have been selling framed pictures for many years and I have a good reputation in the industry as a quality supplier of historical imagery as wall décor reproductions. I hope you will do the right things and restart the onboarding process in the next 7 days. Otherwise I will with 100% certainty file suit against you for breach of contract. I will provide the evidence I am submitting to you in this letter as proof / evidence to support my case.

.....And I hope you realize that by providing a flawed response that distorts the truth of what has gone on here, that will be seen in court in Massachusetts as a "bad faith" gesture on your part. It will most certainly increase my ability to claim consumer fraud, 93A, three times damages for my claims.

...Alternatively, I will accept a settlement of $20,000 to compensate me for my time invested into this partnership, as I noted in my demand letter. And to agree not to litigate if you are still unwilling to work with me as we agreed.

... I think you may agree, you have not done any diligence in this matter and it seems like your onboarding technician made some erroneous decision to block my access from the onboarding process without being mindful that I had a contract with you. To try to escape that reality, you now seem to have just

come up with this flawed reasoning after the fact trying to make some sense of all this to your favor.    That is not going to pass muster if this goes to court.

....I was honest and straightforward in my application.  I did not commit any fraud whatsoever.  I looked forward to working with you.   You have not treated me with the same respect and courtesy.   Yet, still, I am happy to work with you if we can move past your misunderstandings.

I appreciate your understanding.

..And I appreciate your understanding and consideration and look forward to your response within 7 days of how you will resolve this matter, hopefully, amicably.

....Thank you.

Jim Lantos

Best,


Jim Lantos

Best,

**SAMANTHA FOWLER**
Counsel, Litigation
Pronouns: she/her




**From:** Peter Forster <pefo0128@outlook.com>
**Sent:** Tuesday, June 11, 2024 4:26 PM
**To:** Jim L <jim@jimlantos.com>
**Subject:** Fwd: Snapshots of the Past Demand Letter


Get Outlook for Android

**From:** Samantha Fowler <sfowler1@wayfair.com>
**Sent:** Tuesday, June 11, 2024 2:24:30 PM
**To:** Pefo0128@outlook.com <Pefo0128@outlook.com>
**Subject:** Snapshots of the Past Demand Letter

Good morning Mr. Forster,

5

I received your letter regarding Snapshots of the Past ("Snapshots"). Snapshots was flagged through our internal system as potentially fraudulent. The information input contained several red flags:

1. Email Address: the email address did not match the company website or the contact person (snapshotspast@gmail.com)
2. Phone number/Email match: Its important that the phone number and email address provided match the website provided. In this case, Snapshots provided its amazon page which did not list a phone or email so no match could be made.
3. Company address: Snapshots provided two addresses - 299 Main St. and 1350 Mineral Springs Ave. These addresses did not match a registered business.

Because of these flags, Snapshots did not pass our Know Your Business test. Wayfair is not required to activate suppliers that do not pass our business checks nor are we required to continue the onboarding process if the business is deemed not to be a good fit. For these reasons, Wayfair is not moving forward with Snapshots partnership.

I appreciate your understanding.

Best,

**SAMANTHA FOWLER**
Counsel, Litigation
Pronouns: she/her